UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIMOTHY A. WOODHAMS,
*individually and on behalf of all others similarly situated, et al.*,
                            Plaintiffs,

-v-

PFIZER, INC.,
                            Defendant.

18-CV-3990 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    On behalf of themselves and a putative nationwide class, Timothy Woodhams and nine other individuals allege that Pfizer Inc., which markets and distributes Robitussin cough syrup, "deceives consumers by charging more for 'Maximum Strength' Robitussin even though it contains a lower concentration of one of its two active ingredients than does 'Regular Strength' Robitussin." *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 741, 745 (N.D. Ill. 2018). Pfizer moves to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6), and separately moves to strike the complaint's class allegations under Rule 12(f). For the reasons that follow, Pfizer's motion to dismiss is granted in part and denied in part, and its motion to strike the complaint's class allegations is denied.

**I.    Background**

    **A.    Factual Allegations**

    The following facts, drawn from the Complaint, are presumed true for the purposes of this motion. (*See* Dkt. No. 4 ("Compl.").)

1

Each of the nine named plaintiffs,[1] two of whom are citizens and residents of California, with the rest being citizens and residents of Michigan, Florida, Arkansas, New York, Colorado, North Carolina, and Missouri, respectively, purchased at least one bottle of "Maximum Strength" Robitussin cough syrup from a third-party retailer in his or her home state. (Compl. ¶ 8–17.) These purchases happened in 2016, 2017, or 2018. (*Id.*)

Pfizer, a Delaware corporation with its principal place of business in New York (Compl. ¶ 18), markets and distributes "Regular Strength" Robitussin and "Maximum Strength" Robitussin (Compl. ¶ 25–26).

Both Maximum Strength Robitussin and Regular Strength Robitussin cough syrup contain two active ingredients: dextromethorphan hydrobromide ("DXM Hbr") and Guaifenesin. (*Id.*) DXM Hbr syrup "is a combination of an antihistamine and a cough suppressant used to treat [symptoms] caused by colds or allergies." (Compl. ¶ 21.) Guaifenesin is an expectorant, which "thin[s] bronchial secretions and make[s] coughing more productive." (Compl. ¶ 23.)

The recommended adult dose of Regular Strength Robitussin is 10 ml (Compl. ¶ 34); each dose contains 20 mg of DXM Hbr and 200 mg of Guaifenesin (Compl. ¶ 33). The same volume of Maximum Strength Robitussin contains the same amount of Guaifenesin (200 mg), but only half as much DXM Hbr (10 mg). (Compl. ¶ 37.)

| Product | Quantity of DMX Hbr per 10 ml | Quantity of Guaifenesin per 10 ml | Quantity of DMX Hbr per 20 ml | Quantity of Guaifenesin per 20 ml |
|---|---|---|---|---|
| Maximum Strength Robitussin | 10 mg | 200 mg | 20 mg | 400 mg |
| Regular Strength Robitussin | 20mg | 200 mg | 40 mg | 400 mg |

---

[1] Plaintiff Hoaglund has voluntarily dismissed his claims. (*See* Dkt. No. 32.)

(*Id.*)

Faced with the same set of facts, Judge Feinerman of the Northern District of Illinois posed the question: "Then how, one might ask, can Pfizer call Maximum Strength Robitussin 'Maximum Strength' and Regular Strength Robitussin 'Regular Strength'?" *Al Haj*, 338 F. Supp. 3d at 747. That court's answer: "The answer would be obvious to any reasonably competent carnival game operator: Pfizer fixes the recommended adult dose of Maximum Strength Robitussin at *20 ml*, double the recommended adult dose of Regular Strength Robitussin." *Id.* (emphasis in original). Indeed, the recommended 20 ml adult dose of Maximum Strength Robitussin has the same amount of DXM Hbr (20 mg) and twice as much Guaifenesin (400 mg) as the recommended 10 ml adult dose of Regular Strength Robitussin. (Compl. ¶ 35.) A four-ounce bottle of Maximum Strength Robitussin contains only 5.9 doses, while a four-ounce bottle of Regular Strength Robitussin contains 11.8 doses. (Compl. ¶ 39.) Yet Pfizer charges more for a four-ounce bottle of Maximum Strength Robitussin, despite the fact that it contains a smaller amount of active ingredients than a four-ounce bottle of Regular Strength Robitussin. (Compl. ¶ 42.)

| Product | Retailer | Price |
|---|---|---|
| **Regular Strength Robitussin (4 FL OZ)** | Walgreens | $7.99 |
|  | Walmart.com | $5.49 |

| Product | Retailer | Price |
|---|---|---|
| **Maximum Strength Robitussin (4 FL OZ)** | Walgreens | $9.49 |
|  | Walmart.com | $6.58 |

(*Id.*)

"To differentiate the two products, the Maximum Strength Robitussin package contains a large red bar within which the phrase "Maximum Strength" is printed in white letters, and it places the word 'MAX' in red letters underneath the letters 'DM.'" *Al Haj*, 338 F. Supp. 3d at 747; (*see* Compl. ¶ 25–26).



(Compl. ¶ 25–26) (red arrows and captions above images added).

### B.     Procedural History

Plaintiff Timothy Woodhams and Karmel Al Haj, who is not a plaintiff in this case, first filed consumer protection and unjust enrichment claims arising from their respective purchases of Maximum Strength Robitussin in the Northern District of Illinois on September 18, 2017. *See* Class Action Complaint, *Al Haj v. Pfizer*, No. 17 Civ. 6730, Dkt. No. 1 (Sept. 18, 2017). Woodhams, a Michigan resident, and Al Haj, an Illinois resident, also filed identical claims on behalf of a nationwide class of purchasers of Maximum Strength Robitussin. *Id.* The *Al Haj* court dismissed Woodhams's claims without prejudice for lack of specific personal jurisdiction, but the court denied both Pfizer's motion to dismiss Al Haj's claims and its motion to strike the nationwide class allegations. *Al Haj*, 388 F. Supp. 3d at 758.

4

On May 4, 2018, Woodhams re-filed his consumer protection and unjust enrichment claims under the laws of his home state in this district, where Pfizer's principal place of business is located. (*See* Compl.) Nine other individual plaintiffs brought the same claims under the laws of their respective home states. (*See id.*) Plaintiffs also filed consumer protection and unjust enrichment claims under the laws of all fifty states and the District of Columbia on behalf of a putative nationwide class. (*See id.*) Pfizer moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) and to strike the nationwide class allegations under Rule 12(f).

**II.     Motion to Dismiss**

    **A.     Legal Standard**

To overcome a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In resolving a motion to dismiss, the court "must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Doe v. Indyke*, 457 F. Supp. 3d 278, 282 (S.D.N.Y. 2020) (citing *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014)).

    **B.     Discussion**

        **1.     Claims Arising from the Laws of States Where No Named Plaintiffs Purchased Maximum Strength Robitussin**

Pfizer first moves to dismiss all claims arising from the laws of any states where a named plaintiff did not purchase Maximum Strength Robitussin. Since this is a diversity jurisdiction case, the Court must apply New York's choice-of-law rules in determining the applicable

substantive law.  The first step is determining "whether there is an actual conflict between the laws of the jurisdictions involved." *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 146 (S.D.N.Y. 2008) (internal quotation marks omitted).  The second step is deciding "which jurisdiction has the greatest interest in th[e] litigation." *See id.* at 148.  Pfizer contends that there are actual conflicts among the consumer protection and unjust enrichment laws of the fifty states and the District of Columbia (Dkt. No. 25 at 6–12), and the state where each plaintiff purchased Maximum Strength Robitussin would have the greatest interest in the litigation, *see Grand Theft Auto*, 251 F.R.D. at 149 ("[T]he interest analysis favors application of the consumer-fraud law of the state wherein each . . . [c]lass member purchased" the product); *id.* (New York choice-of-law rules "require[] the application of the law of the state of purchase to . . . [c]lass members' claims for . . . unjust enrichment")  So, according to Pfizer, Plaintiffs cannot assert individual claims arising under the laws of the forty-one states and the District of Columbia where no named Plaintiff purchased Maximum Strength Robitussin.

      What Pfizer sidesteps, however, is that the named "Plaintiffs only seek to bring claims on behalf of themselves under the laws of their home states" where they purchased Maximum Strength Robitussin.  (Dkt. No. 34 at 6–7.)  That the Plaintiffs lack standing to bring suit under the laws of the forty-one states and the District of Columbia, where none of them purchased Robitussin, is "immaterial because they are not bringing those claims on their own behalf, but are only seeking to represent other, similarly situated consumers in those states." *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Pracs. Litig.*, 701 F. Supp. 2d 356, 377 (E.D.N.Y. 2010).  The relevant inquiry for whether Plaintiffs can bring claims on behalf of putative class members under the laws of these other states is one of "predominance under Rule 23(b)(3), not a question of standing." *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897

F.3d 88, 96 (2d Cir. 2018).  Because this predominance inquiry is appropriate at the class certification stage, not at the motion to dismiss stage, the Court denies Pfizer's motion.  *See Ramirez v. Dollar Phone Corp.*, No. 09 Civ. 2290, 2009 WL 3171738, at *2 (E.D.N.Y. Oct. 1, 2009) ("The fact that the named Plaintiffs may not have individual standing to allege violations of consumer protection laws in states other than those in which they purchased Defendants' [product] is immaterial on a motion to dismiss a class action." (cleaned up)).

### 2.      Consumer Protection Claims

Pfizer next moves to dismiss all of Plaintiffs' claims, contending that Plaintiffs fail to plausibly allege that they were misled.  Pfizer's arguments focus on the fact that *one dose* of Maximum Strength Robitussin contains more medicine than one dose of Regular Strength Robitussin and that both products explicitly provide dosage information and the amount of active ingredients per dose.  Like the *Al Haj* court, this Court concludes that "Pfizer's premise (one dose of Maximum Strength Robitussin has more medicine than one dose of Regular Strength Robitussin) is right, but its conclusion (that the 'Maximum Strength' label therefore is not deceptive . . .) is wrong, at least at the pleading stage when all reasonable inferences must be drawn in [Plaintiffs'] favor."  *Al Haj*, 338 F. Supp. 3d at 754.  A dose of Maximum Strength Robitussin has more active ingredients in it only because the recommended dose is twice the volume of the recommended dose for Regular Strength Robitussin.  "[I]t is at least plausible that a reasonable consumer would not expect that a product is fairly represented as 'Maximum Strength,' and is properly priced higher than its 'Regular Strength' cousin, if the consumer gets more of its active ingredients only by consuming more of it."  *Id.* at 755.

The Court also agrees with the *Al Haj* court's conclusion that Plaintiffs' claims survive a motion to dismiss even though both Regular Strength Robitussin and Maximum Strength Robitussin explicitly list the dosage and the amount of active ingredients per dosage.  A

reasonable consumer would not be able to obtain all relevant information from just the label of Maximum Strength Robitussin. A reasonable customer instead would only be able to learn "that the Maximum Strength version contained a *lower* concentration of DXM Hbr and the same concentration of guaifenesin as the Regular Strength version . . . by taking two products off the shelf and comparing their labels." *Id.* at 755–56. Expecting a customer to "cross-check a product's ingredient list against *another* product's list and then perform arithmetic to make sure she is comparing equivalent dosage volumes, all to ensure that the product she intends to purchase has the qualities it purports to have" is not reasonable. *Id.* at 756. Each of the cases that Pfizer cites to argue to the contrary is inapposite (*See* Dkt. No. 20 at 11–12; Dkt. No. 40 at 4–5): the product labels in those cases contained all of the information a reasonable customer would need, without needing to refer to the label of a second product.

Pfizer's attempts to distinguish this case from *Al Haj* are unavailing. Pfizer alleges that the Maximum Strength Robitussin that the Plaintiffs purchased had a "See New Dosing" label, unlike the Maximum Strength Robitussin that the plaintiffs purchased in *Al Haj*. (*See* Dkt. No. 20 at 15.) Pfizer contends that this purported "See New Dosing" label supports a different conclusion here than that of the *Al Haj* court because that court reached its conclusion, in part, based on its determination that nothing "about Maximum Strength Robitussin's retail presentation would prompt . . . suspicion from a reasonable customer" to cross-check the label with Regular Strength Robitussin's label. *Al Haj*, 338 F. Supp. 3d at 756. This argument fails for a simple reason: The Complaint's image of the Maximum Strength Robitussin that Plaintiffs purchased does not contain this "See New Dosing" label. The Court must assume that all of the facts in Plaintiffs' Complaint are true at the motion to dismiss stage. *See Doe*, 457 F. Supp. 3d at 282 (S.D.N.Y. 2020) (citing *Steginsky*, 741 F.3d at 368 (2d Cir. 2014)). Whether Plaintiffs

purchased a Maximum Strength Robitussin with a "See New Dosing" label is a question of fact that cannot be appropriately resolved on a motion to dismiss.[2]

Pfizer further argues that there is no misrepresentation here because a dose of Maximum Strength Robitussin contains the maximum allowed amount of each active ingredient pursuant to FDA regulations. (*See* Dkt. No. 20 at 13 (citing 21 C.F.R. § 341.74(d)(1)(iii); *id*. § 341.78(d)).) As Plaintiffs counter, however, Pfizer does not "credibly argue that a reasonable customer would read 'maximum strength' to communicate information about FDA regulations" (Dkt. No. 34 at 12), nor does Pfizer cite any cases supporting the proposition that such an interpretation of maximum strength" is reasonable as a matter of law.

Pfizer argues that, even if the Court concludes that Plaintiffs have plausibly alleged a misrepresentation (which it does), the Court should still dismiss this case because Plaintiffs fail to plausibly allege causation.[3] Here, too, Pfizer recycles arguments that the *Al Haj* court rejected — and properly so. The "Maximum Strength" label could not have caused Plaintiffs to suffer a monetary loss, according to Pfizer, since each dose of Maximum Strength Robitussin contained

---

[2] In any event, Pfizer fails to explain how a "See New Dosing" label on Maximum Strength Robitussin would prompt a reasonable consumer to not only inspect all of the information on a box of Maximum Strength Robitussin but also "cross-check [Maximum Strength Robitussin's] ingredient list against [Regular Strength Robitussin's] list and then perform arithmetic to make sure she is comparing equivalent dosage volumes, all to ensure that the product she intends to purchase has the qualities it purports to have." *Al Haj*, 338 F. Supp. 3d at 756.

[3] Pfizer asserts that Plaintiffs bringing consumer protection claims under the laws of California, Michigan, or Arizona must prove reliance instead of causation. (*See* Dkt. No. 40 at 5–6.) Pfizer appears to be incorrect about what California and Michigan require; a consumer can prevail with a showing of causation in these states. *See Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 887 (Cal. 2011) (holding that California's Unfair Competition Law "requires a showing of a causal connection or reliance on the alleged misrepresentation"); *Brownlow v. McCall Enters., Inc.*, 888 N.W.2d 295, 299 (Mich. Ct. App. 2016) (holding that the Michigan Consumer Protection Act requires "resolv[ing] the question of causation"). But the Court dismisses Plaintiff de Clue's consumer protection claim, which arises under the Arkansas Deceptive Trade Practices Act ("DTPA"), because de Clue concedes that his DTPA claim "expressly require[s] reliance" and "should be dismissed." (Dkt. 34 at 14 n.57.)

more active ingredients than a dose of Regular Strength Robitussin and Maximum Strength Robitussin had a label with dosage information. (*See* Dkt. No. 20 at 16–20.) Again, despite these true premises, the Court still concludes that the "Maximum Strength" label could have plausibly misled Plaintiffs. And "plaintiffs alleg[ing] that defendant's material deception caused them to suffer a [monetary] loss . . . . satisfies the causation requirement." *Stutman v. Chem. Bank*, 731 N.E.2d 608, 613 (N.Y. 2000). This is exactly what Plaintiffs have pleaded — just like the plaintiffs did in the *Al Haj* case:

> [Plaintiffs] allege[] that [they] "purchased Maximum Strength Robitussin based on Pfizer's representation that the product was, in fact, maximum strength, containing more of the active ingredients than in the regular version," that [they] were] "deceived" because the product did not satisfy that expectation, and that [they were] by having to pay more for Maximum Strength Robitussin than [they] would have paid for the Regular Strength version. *[Plaintiffs] ha[ve] therefore done all [they] need[] to do to plead proximate cause at this stage of the lawsuit.*

*Al Haj*, 338 F. Supp. 3d at 756 (emphasis added) (internal citation omitted).

### 3.     Woodhams's Michigan Consumer Protection Act Claim

Pfizer also moves to dismiss Woodhams's consumer fraud claim, which he brings under the Michigan Consumer Protection Act ("MCPA"), arguing that the MCPA's safe-harbor provision bars the claim. (*See* Dkt. No. 20 at 20–21.) The MCPA safe-harbor provision immunizes "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Mich. Comp. Laws § 445.904(1)(a). Since the FDA regulates the marketing and labeling of medications like Robitussin, Pfizer contends that Woodhams's MCPA claim must be dismissed. What Pfizer elides, however, is that the safe-harbor provision exempts conduct that is "*specifically authorized*" by a regulatory body. "Although Food and Drug Administration regulations obligate drug manufacturers to indicate a drug's recommended and required doses, *see* 21 C.F.R. §§ 341.74 & 341.78, federal law does not require them to use the term 'Maximum

10

Strength,' *see id.*, and in fact forbids them from using 'misleading' labels, *see* 21 U.S.C. § 352(a); 21 C.F.R. § 201.10(c)." *Al Haj*, 338 F. Supp. 3d at 756–57 (holding that the Illinois Consumer Fraud and Deceptive Business Practices Act's safe-harbor provision, which similarly exempted transactions "specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States," did not shield Pfizer from liability). Because the Complaint plausibly alleges that the "Maximum Strength" label was misleading, Woodhams's MCPA claim survives.

### 4. Unjust Enrichment Claims

Pfizer finally moves to dismiss some of Plaintiffs' claims for unjust enrichment. For the unjust enrichment claims brought under the laws of Colorado, Florida, and New York, Pfizer asserts that these claims fail because they are duplicative of their other causes of action. (*See* Dkt. No. 20 at 21–23.) And for Plaintiffs' unjust enrichment claims under the laws of Michigan and Florida, Pfizer argues that these claims should be dismissed because Plaintiffs did not confer a direct benefit on Pfizer. (*See* Dkt. No. 20 at 23–24.) Plaintiffs counter that the laws of Colorado, Florida, and New York allow them to plead unjust enrichment in the alternative (Dkt. No. 34 at 18–19); Plaintiffs further argue that Michigan and Florida law permit unjust enrichment claims when a plaintiff directly or indirectly confers a benefit on a defendant (Dkt. No. 34 at 19).

The Court agrees with Pfizer that "an unjust enrichment claim premised on the same exact conduct underlying a consumer protection claim" cannot proceed under the laws of Colorado, Florida, and New York. (Dkt. No. 40 at 9.) Unjust enrichment claims like these, "even [when] pleaded in the alternative . . . will not survive a motion to dismiss." *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017); *see also Licul v. Volkswagen Grp. of Am., Inc.*, No. 13 Civ. 61686, 2013 WL 6328734, at *7–*8 (S.D. Fla. Dec. 5, 2013)

11

(dismissing unjust enrichment claim because it "is a vague catch-all that does no more than incorporate by reference the alleged wrongdoing already addressed by their other legal causes of action"); *Touchtone Grp., LLC v. Rink*, 913 F. Supp. 2d 1063, 1084 (D. Colo. 2012) ("Though not identical to the allegations supporting Plaintiff's [Uniform Fraudulent Transfer Act] claims, these allegations put forth a similar theory of liability and are, thus, duplicative and improper."). The cases that Plaintiffs cite applying the laws of Colorado, Florida, or New York that allowed the pleading of unjust enrichment claims in the alternative were cases in which the unjust enrichment claims were premised on different conduct or facts (*See* Dkt. No. 34 at 19 n.34) — *i.e.*, not duplicative of other causes of action.[4]  Since the Colorado, Florida, and New York unjust enrichment claims here are not premised on different facts, the Court dismisses them.

The Court also dismisses the Michigan unjust enrichment claim.  Michigan law has sometimes allowed plaintiffs to bring an unjust enrichment claim against a defendant on whom they indirectly conferred a benefit.  Yet these cases involved "'some sort of direct *interaction*'" between the parties, as opposed to the distant relationship between "'consumer plaintiffs and a remote manufacturer.'"  *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 428 (S.D.N.Y. 2017) (quoting *Storey v. Attends Healthcare Prods., Inc.*, No. 15 Civ. 13577, 2016 WL 3125210, at *12 (E.D. Mich. June 3, 2016).  Woodhams, the plaintiff who purchased

---

[4] Plaintiffs cite one case applying Florida law, *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Prac. Litig.*, 955 F. Supp. 2d 1311 (S.D. Fla. 2013), which allowed a duplicative unjust enrichment claim.  This case "exists in a vacuum," however, and other Florida appellate courts have not "held that claims for unjust enrichment may proceed in tandem with legal claims based on the same factual allegations without any showing that those claims are inadequate." *Tyman v. Pfizer, Inc.*, No. 16 Civ. 6941, 2017 WL 6988936, at *21 (S.D.N.Y. Dec. 27, 2017), report and recommendation adopted, 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018)

Robitussin in Michigan at Harding's Market, does not allege that he had any direct interaction with Pfizer, so his unjust enrichment claim is dismissed.[5]

### III.     Motion to Strike Nationwide Class Allegations

The Court denies Pfizer's motion to strike the nationwide class allegations, substantially for the reasons explained by Judge Feinerman in *Al Haj*. *See Al Haj*, 338 F. Supp. 3d at 757–58. Motions to strike are "generally disfavored," *Gulino v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, No. 96 Civ. 8414, 2014 WL 10447206, at *3 (S.D.N.Y. Oct. 24, 2014), and motions to strike class allegations are often denied as premature, *see, e.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) ("Generally speaking . . . [motions to strike class allegations] are deemed procedurally premature."); *Mazzola v. Roomster*, 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012) ("[D]istrict courts in this Circuit have frequently found that a determination of whether the Rule 23 requirements are met is more properly deferred to the class certification stage."). There are "limited circumstances" in which a motion to strike class action allegations is appropriate; "[t]hose circumstances are not present here." *See Al Haj*, 338 F. Supp. 3d at 757–58 (noting that the "[c]lass certification analysis is necessarily contextual, and the context . . . is in this instance better explored under Rule 23, on a developed record, than under Rule 12(f)."). Pfizer's motion to strike the complaint's class allegations is therefore denied, without prejudice to Pfizer's raising its arguments in opposition to any Rule 23 motion.

### IV.     Conclusion

For the foregoing reasons, Pfizer's motion to dismiss is GRANTED in part and DENIED in part. The unjust enrichment claims of Plaintiffs Covello, de Clue, Hinz, Paul, and Woodhams

---

[5] Because the Court dismisses the Florida unjust enrichment claim as duplicative, it does not address this separate basis for dismissal of the claim.

are dismissed; the motion is denied with respect to the remaining claims. Pfizer's motion to strike the nationwide class allegations is DENIED. Pfizer shall file an answer to the remaining claims within 21 days after the date of this opinion and order.

    SO ORDERED.

Dated: November 15, 2021
       New York, New York

                                                    J. PAUL OETKEN
                                             United States District Judge